Good morning and may it please the Court. Anna Rose Matheson here with Jordan Raphael on behalf of plaintiff appellant Trader Joe's. I'd like to preserve three minutes for rebuttal. Trader Joe's has spent nearly 50 years cultivating its trademarks. It has worked very hard to ensure its reputation for selling tasty food at reasonable prices and it has spent millions of dollars in setting up a quality control system to be sure those food products are safe. Michael Hallatt buys and resells Trader Joe's products in a knockoff Trader Joe's store. But Hallatt transports these products in a manner that allows the products to spoil and deteriorate. Instead of the careful temperature monitor shipping containers that Trader Joe's uses, Hallatt puts the products in the back of a minivan. His handling of the goods does not come close to the quality control standards that Trader Joe's uses and that is risking the goodwill that Trader Joe's has tried so hard to work, cultivate. As set out in the complaint, we know of at least one incident where a customer purchased spoiled food from Trader Joe's. But not a customer from Washington State? That's not alleged in the claim. I'm actually not aware. Okay, so just to go quickly first to the state law claims. Yes. I understand your allegations about not handling the food properly, at least according to Trader Joe's standards. But it seems to me under the Washington Consumer Protection Act that would have to affect the sale of assets to the people of Washington? Directly or indirectly. So what's your best shot at how that even indirectly affects the people in the state of Washington please? Well so Trader Joe's has a number of stores in the state of Washington. It employs a number of Washington residents. Hallatt Trader Joe's stores. So essentially, tarnishment of Trader Joe's trademarks could affect the sales in Trader Joe's stores. It can in fact affect Trader Joe's ability to sell its products. And the tarnishment is the is the what might result from the poor transportation? There's actually a number of different layers. So one is certainly the fact that the poor transportation can result. So if if Mr. Hallett were all of a sudden bought a nice van and it was a refrigerated van and he was handling it in the same way that Trader Joe's would handle its own products, does that affect your case? No actually. The cases make clear that it doesn't matter whether or not the person is adhering to their own quality control standards. It matters whether or not they're adhering to the quality control standards of the trademark owner. Okay so wait a minute. I'm still trying to just get you to answer what's your best shot on the state claims before we get to the latter Matt. And you've lost me. I don't understand how this affects the people of the state of Washington. I think you have to have that for both your state law claims, don't you? Yes. Okay. Directly or indirectly though. As I understand your argument, tarnishment means that you're suggesting that people in the state of Washington won't buy Trader Joe's products if they hear about affected goods. Exactly. So for you are arguing that could happen in the future one day maybe? It's likely to happen. Which is? Do you do allege anywhere that it has? That it. That your sales have diminished or that your reputation has suffered yet? We allege that the reputation is likely to suffer which is all that's required for a trademark claim. As a result of that one incident. Trade trademark doesn't. Well it's not simply the kind of catastrophic spoiled spoiled food issue. Trademark tarnishment can be in even more minor ways. What have you alleged that it is? I appreciate that but what have you alleged here that has happened? We allege that he is selling food that doesn't adhere to our quality control standards. In Canada? Yes. It doesn't adhere to the what we are trying to cultivate in the store. So Trader Joe's spends a lot of time making sure the people selling its products are trained, are friendly, provide free samples so that there is essentially a desire to come back to Trader Joe's. So we do not allege that there have there is at this moment lost sales from this infringement. But that's not required for a trademark claim. And that's that's a direct answer to my question which I appreciate. Can I get you to switch gears here? I'm trying to figure out how it is consistent under the Timberlane test. All I don't even know how many facts. Seven I think. It seems to me that that analysis shifts considerably if this individual resides in and and or oversees this operation in Washington State. But the we've got two different allegations that seem to me to be irreconcilable. One is that he is an LPR and the other is that he's domiciled in Canada. That is true. You want to speak to that? So he is he's admitted that he is a has permanent resident status. He also says he is domiciled in Canada and I I recognize that that seems as though it should be irreconcilable but that is with respect an issue for him since he has in fact admitted that he is a long time. Well is it is it an admission is it is it isn't it an issue for you? If you if you're granted leave to amend here what amendment can you make? Well so first is most basically it's not a fact certainly a factor that affects Timberlane but it's not a critical factor. It's not the it's not a factor that pushes it over and the district court itself found that the citizenship of the parties was a factor that supported us. I'm not talking about citizenship I'm talking about where these operations are happening and I didn't see anywhere where you've alleged that he's calling the shots overseeing this operation in Washington State. In fact you allege that he's domiciled in Vancouver. That's correct but you have allegations though that he buys they buy he employs people to buy product here. Exactly they go on they go on massive shopping trips. Absolutely but isn't your case a whole lot stronger if you allege that he is in fact domiciled here? It might be stronger but it's strong enough with him being domiciled in Vancouver when he comes over frequently to make long-term shopping trips with Washington residents visits a numbers of different Trader Joe's stores and essentially gets the things without which his operation would not be able to exist. Councilwoman what's the answer to the question about what you would like to allege if you're given leave to amend? I think we've alleged sufficient to state Alanna Macklin. You don't want leave to amend? We don't believe we need to. Do you have anything else to allege? I mean it looks like you've done looks like I you know when I read the amended complaints and looked at things it looks like you're restating things that have largely been stated before so I I'm not sure there's unless you've got something something new to offer the court looks like you've argued everything you can. Right and that's why the focus of our complaint isn't that we should have been given leave to amend. Well but you do make the argument Council that you should have been given leave to amend right? Our primary argument is that we have stated a claim under the Lanham Act and and and known to answer the question there are not we would not seek to go back and add a immediate loss sales because that is that one of the district courts fundamental misunderstandings of the Lanham Act you do not have to show that you have actual damages it's sufficient the Lanham Act you can collect damages for the infringers disgorgement of their profits. One of the other factors in the Kimberlin test is whether there's any activity in the foreign country between the parties. Now as I understand the record Trader Joe's applied for trademark protection in Canada of its marks? That's true. And obtained that? It obtained a preliminary allowance so it is not at the moment it does not have a trademark but the Canadian office issued a notice of allowance which says essentially no other entity has found finds it no other entity has the right to use Trader Joe's trademark. There's no there are no proceedings whether in court or administratively between Trader Joe's and Hallett? That's correct no proceedings at all. If you were to get an injunction from this federal court in Washington how would you how would you ask that it be framed? So in our complaint we asked for an injunction preventing Hallett's use of the Trader Joe's mark in which would extend to his store in Vancouver. How could you enforce that? Well there's actually a couple different ways. One the Canadian Supreme Court has expanded and has recently been shown itself willing to enforce foreign injunctions. It applies an analysis looking at the different factors and connections but that's similar to the analysis that the court wanted to go through. Why couldn't you just have a more limited injunction that enjoins him from transporting those goods across Canada? That is actually exactly the second point I was going to make that even if the court simply said it was an injunction in the state of Washington or in the in the United States limiting him from these this sort of shopping activity that itself would be sufficient. That seemed like that would stop it at its source. Yes we'd be happy with that we think we could get a broader injunction but just injunction in the United States would be sufficient for our purposes. So actually the Supreme Court's decision in Steele is a useful counterpoint to this. In Steele that was the case where the Supreme Court first said the Lanham Act applies extraterritorially. It was a case where someone purchased products component goods in the United States but they were perfectly legal when purchased, transported them to Mexico, assembled them to make infringing goods. Counterfeit goods right? Yes counterfeit goods. But in that case the the it's Bulova watches right? Yes. Okay and those Bulova watches were being marketed in Mexico as opposed to Trader Joe's which I think doesn't market in across the border in Canada right? Right. Isn't that an important distinguishing fact in that case? It shouldn't be. That would actually affect whether or not that might make the Mexican interest stronger but it was sufficient here that the impact will be felt in the United States and in the Supreme Court in the Steele versus Bulova case said look the fact that the component the purchase of component goods in the United States might have been innocent in isolation when focused on the fact that in in Canada or in Mexico when they were put together they are infringing on the US trademark that itself is is infringement and the fact that the goods the purchase of the products in the United States is in Steele versus Bulova some of the watches did come back across the border but that is essentially this was far long before the Internet that is essentially an analog to how now news and trademark tarnishment can occur simply by news of the Internet by people posting online reviews of Trader Joe's goods that say these products are spoiled the chips are all crunched in the bag they're not really full the sort of things that can affect the US trademark this is a Trader Joe's is a US company the US trademark all of its stores and all of its products are sold in the United States it should not have to go to Canada or to any other country where someone comes to the US buys its goods and then exports them. Aside from potential damage to Trader Joe's reputation as is there any possibility that Trader Joe's is suffering any kind of economic harm from Canadians not coming on purchasing products directly? That's certainly possible we did not allege that. But how does that work because he's buying he's not stealing the stuff from the Bellingham Trader Joe's he's buying it those sales are right and then they're being resold so I have the same question Judge Bobby has I think. Yes well so it's certainly possible when people come to Trader Joe's certainly when I come into a Trader Joe's store I end up finding myself buying a number of things that I hadn't necessarily come in there intending to buy. Pirate Joe's sells the product is a significant markup. So if people are going to Pirate Joe's they might only go and buy one or two of their favorite products so they are at such a markup whereas if they did come to the United States they might buy additional products. Do you do you allege that? We do not allege that and that's we don't think we need to. Right but what one thing you're counting on is that people go to the grocery store like I do when I'm hungry and I wind up buying set 80 things but I thought I was gonna buy two. In other words if they had come into the store to see the full panoply of perhaps purchase more. That is not actually something we're counting on. It certainly is a way that we could potentially be harmed. It's also a way you could potentially amend right? It is but the real harm and I'm sorry to kind of go back to the point the real harm is the trademark. We have worked so hard to understand that argument. Does Trader Joe's market in Canada? It has its website that is accessible certainly to Canada. It doesn't do any online sales. Does it advertise on the radio? I am not aware of that. I do certainly know it gets a lot of traffic. The border is very porous as we alleged in the complaints. Significant numbers of the sale. Down to Bellingham and. Exactly something like 40% of the credit car sales are from foreign residents. Does Mr. Hallett have any advantage over other Canadian citizens because he's an LPR in terms of getting in or out of the United States? Can he come across the border with greater facility than other Canadian citizens can? I suspect he can. I know he still has to go through the customs declaration process. I think really his the fact that he has availed himself of United States protection of its laws and its long-term resident status is certainly a factor that with Trader Joe's residents is here as well. Okay. You want to save some time for rebuttal? Yes. Thank you very much. Thank you. Good morning, your honors. May it please the court. Nathan Alexander on behalf of the appellee, Michael Hallett. First and foremost, the district court properly found that all of the allegedly infringing activity that violates the Trader Joe's took place entirely in a foreign country. Therefore, the district court, following long established Ninth Circuit precedent, determined that Trader Joe's claims require an impermissible extraterritorial application of Lanham Act. And in reaching that decision, the district court relied on some core facts as alleged by Trader Joe's and certainly reasonably inferred from not only the complaint, but they had a first amended complaint and as the court saw in the record, they put together a second amended complaint, a proposed second amended complaint that they submitted with their motion for reconsideration. Counselor, has your client abandoned his LPR status? He has not. How is it then that the equities, and I use that term loosely, but the application of these multi-factor tests that we need to apply, that the district court needed to apply, wouldn't they change pretty significantly if your client is indeed domiciled here? That's an interesting question. Domicile may affect the analysis if you consider that steel is still good law, but it's more than just domicile, it is what activities were coming back into the United States. Right, I think that's exactly right. And that's why it seems to me to be so significant that there may have... There's this question about whether there is... Congress has alleged that he's domiciled up there and that was the jumping off point for the paragraph that you started that I just interrupted about the activities the district court was looking to. And if he, Mr. Hallett, is actually residing here in Washington and controlling this operation from Washington State, it strikes me that that's really very different. I don't think it is different. There's no case that has extended the steel citizenship component because it talked about Congress's ability to regulate its own citizen. And so therefore, in that limited context... Well, he's a lawful permanent resident. Right, but he's domiciled in Vancouver. So... What does that mean? Yeah, what... What does that mean? Isn't that a... He's a lawful permanent resident. Why don't we take him for his word? He is a Canadian citizen and he lives in Vancouver. So then he's pulling a hoax with the Immigration Service. It does seem he's got a problem with his LPR status and I recognize this isn't an immigration case, but that's why I asked, has he abandoned that status? It seems to me to be inherently irreconcilable. It has never been an issue with his multiple border crossings. And one of the other, and I think what you're talking about, one of the... Because he represents to the U.S. Border Guards that he's a lawful permanent resident alien in the United States. There are no allegations to that effect. Why shouldn't they be given leave to amend? Well, first of all, they're not asking for leave to amend. Well, they are. They made an argument in this briefing to us. They asked the district court for leave to amend. They asked the district court for leave to amend as a part of their motion for reconsideration. The issues as they are stated in page five of their brief presented, make no indication at all that they're seeking leave to amend. And as counsel has just indicated, there wouldn't be any additional facts that they need to amend because they believe that the facts as stated are sufficient to establish a Lanham Act claim. So I don't think they would have another opportunity to amend the complaint. They've done it several times. In none of those situations have they been able to allege facts that allow them to overcome that extraterritorial barrier to when the Lanham Act should apply to activities. What about in this day and age where there's... We know what has happened to a few really celebrated cases where there's been tainted food and people have become ill, and word of that travels fast, counsel. So I'm thinking about the radio and the internet and how porous that border is. Do you wanna speak to that? Sure. First of all, there have been no allegations that that, in fact, is a concern at all. They state that in some of their arguments, but in any of their complaints, they don't talk... They talk about a material risk of people not coming to the United States to shop at Trader Joe's, but they've alleged no facts that that has ever happened one single time. In fact, the only instance that they can point to, which, by the way, we contend never happened, but that's on the merits, the person was able to identify where she was, purchased the food readily, went back to Pirate Joe's, and then complained to Trader Joe's about it. Trader Joe's does not allege that they were harmed in any way by that interaction. It's a pretty fair inference, though. It's a pretty fair inference if people are complaining about tainted food, right? Well, it's a fair inference, because we don't know what the person wanted beyond that, or if the person decided, I'm no longer gonna eat at Trader Joe's or shop at Trader Joe's because of this bad experience, because that person clearly... Well, they may not buy that particular item from Trader Joe's. Well, they knew particularly where they got that item, and that was from Pirate Joe's, which is why they went to Pirate Joe's first. I got sick eating a tamale or whatever it was, a burrito. So, one isolated incident is not... Clearly not sufficient under the Timberlain factors to establish the type of... But, Gosselaar, it doesn't take much imagination to figure out what's gonna happen here. You might wanna talk to the... She tells her neighbors, I got sick, don't buy the tamales. You buy other things at Pirate Joe's, but don't buy tamales. And besides, what she's arguing is she doesn't have to wait for the outbreak. That's what she's arguing. Is she wrong about that as a matter of law? Because the Timberlain factors have been clear that if... To prove up a cognizable injury to a plaintiff, when all of the confusion or the loss of goodwill is taking place in a foreign country, which is exactly what's happening here, the sales are in Canadian commerce, that you have to show something more than loss of goodwill or dilution. For example, in the Ocean Garden case, the plaintiffs there were saying that their goods were being diluted, and so the court should take that into account as it considered the Timberlain factors as a cognizable injury to them. The court declined to do so, saying all of the individuals who are receiving these truly infringing goods are in Hong Kong, in Taiwan, and because all of that activity is outside of the United States, you have to show something more. And that they did show that they had suffered millions of dollars, or alleged that they had suffered millions of dollars of lost sales. And so the court said that was the basis for the cognizable injury. In the Beach Boys case, the Love decision, citing to the Ocean Garden case, took up that theme as well and said, if the harm is entirely outside of the United States, then you have to show some economic harm. Right, but the Beach Boys case was decided at summary judgment, right? And that's really very different. She's just trying to get past first base here, right? Right, and there's no... You're just looking at the complaint, and she really hasn't had an opportunity to get there yet. That's gonna be her response. But there's not even a sufficiency on the pleadings to get her to that stage, and there's nothing that requires the case to progress beyond infancy in order to make the determinations as to the application of the Lanham Act beyond the borders. Because it's more than just showing, oh, I've put together the elements of a claim to establish a Lanham Act claim. This is about applying a US Act beyond the borders of the United States. Although an injunction could be crafted that would only affect Mr. Hallett's conduct inside the United States. That would presume that the Lanham Act would apply in the first place, and based on the Timberlane factors, they haven't met any one of them. Well, you sort of avoided my point. It was very deft, but you avoided my point. The point is that the injunction could be crafted in such a way that the injunction would not have to be given extra territorial effect. It wouldn't depend on any kind of enforcement in Canada. It could be enforced here in the United States. I don't understand how such an injunction could be put in place if one was even merited, because all of the activities in the United States are perfectly legal activities. But they would have to establish an underlying violation of the Lanham Act. It assumes a violation of the Lanham Act, and then the district court can tailor an injunction to prevent that harm. But the injunction would be, what is the violation of the Lanham Act, according to them, is the sale of those goods in Canada. Sure, in Canada, but it would be very easy to craft an injunction that would be enforceable here. Mr. Hallett, you don't get to buy Trader Joe's goods in the United States and take them back to Canada. We know what you're doing. We know what you're doing with them. You have to stop. Because that is not prohibited conduct, even under the Lanham Act. There has to be an additional... It would be prophylactic. I'm assuming a violation of the Lanham Act. I understand that the principal violation is conducted in Canada. My only point, Counselor, which again, you continue to avoid is that an injunction could be crafted that could be enforced entirely within the United States without requiring Canadian cooperation. I see your point. I don't know if I agree with it, but I do see the point. And I see that the injunction... He maintains... Let me just clarify one thing. He maintains quite an operation here when he was doing this. I don't know if he's still doing it today, but he maintains a significant operation, correct? He is selling, yes, according to the allegations and the complaint, thousands of dollars worth of Trader Joe's products. And he's hiring people to help him do this? Correct. And paying people here in the United States to do this here in Washington? Correct. And he's directing all of that here in Washington? He's directing... He hires... He recruits people to help him. He's got a... In Washington, correct. He's got it all in Washington. And then somebody drives all this product to Canada? He drives the product to Canada. He drives the... He's crossing that border all the time? Yes. Excess pass. Yes, after having paid, according to Trader Joe's, $350,000, counting two Trader Joe's for those products. While simultaneously maintaining LPR status? While simultaneous, as far as I know, maintaining. But the issue here is that the trademark owner, Trader Joe's, has, in fact, been paid for the trademark goods. He's purchased them. That takes this case completely out of... Isn't Judge Bybee's first question really a lot harder? What if he got a refrigerated truck? I don't think that that would change the analysis. Oh, it changes it a lot, because the primary argument that they're complaining about is they worked really, really hard. That was their opening line, right, to establish a reputation of selling very quality goods at low prices. And their primary concern that I hear loudly and clearly throughout their briefing and today, is that because they're not... Mr. Hallett is not abiding by their quality control standards, their good name is at risk. Okay. What's the best argument you've got that that's not redressable? The... What is the illegal activity, the Lanham Act violation, according to their allegations, is the sale of those goods in Canada. So therefore, the border matters. What happens entirely in Canada in Canadian commerce is a Canadian commerce issue. Under the Timberlane factors, the Lanham Act is not designed to reach that conduct. If Trader Joe's believes that the violations would be upheld under Canadian law, which they haven't established, they have that option. They're not without a remedy. They're just without this remedy, because Ninth Circuit law has said that those type of far reaching conduct is beyond the reach of the Lanham Act. Is it your position that the district court was correct to dismiss this as a 12B1 as opposed to 12B6? I'm speaking, of course, of the Lanham Act claim. Sure. The court was correct in that the law under the Ninth Circuit at the time, including love that the district court relied on quite heavily, as well as a number of district court cases leading all the way up to the time of our motion to dismiss, had still applied the jurisdictional test. Love was pretty careful to sidestep that issue, wasn't it? Well, I don't think it can sidestep it because the district court clearly... If you look at the Central District of California's decision in Love B Mail on Sunday, the district court clearly stated that the basis for dismissal of the Lanham Act claims was lack of subject matter jurisdiction, which then... And applied the Timberlane factors, which then the Love decision affirms in applying the Timberlane factors. And you think that's correct? What I really wanna know is, do you think that's correct? Do you think it's not an element? Yes, I think it is different from the Arbaugh context because, first of all, the Steele v. Boliva case, 1952 Supreme Court decision first establishes that it is a jurisdictional question. And that... Right, but we've said that it's no longer jurisdictional, that's as a result of Arbaugh. Well, it's no longer... Elements of a claim of a Lanham Act, for example, in the La Quinta worldwide decision, as well as more recently in the Gibson-Brands decision, that looked to an element of conduct that was entirely within the United States. So, for example, in La Quinta, Quinta Real wanted to open up a hotel in the United States. They were arguing, after they had already had a permanent injunction entered against them, that, oh, wait a minute, we have this Hail Mary type argument that you didn't have subject matter jurisdiction, because since we didn't use the mark, there's no use in commerce, and so therefore, we don't fall under the Lanham Act. And the court applying Arbaugh said, no, what you're talking about is an element of your claim, it is not jurisdictional, and so therefore, we did have subject matter jurisdiction. I think after Arbaugh and our decision in La Quinta, I think Steele is probably not good law to the extent that it is... That it goes to the question of subject matter jurisdiction. It seems to me that Steele is still quite relevant as to a 12B6 claim under the Lanham Act. It's interesting that the Supreme Court, which is a National Australia Bank, but doesn't overrule the jurisdictional issue. Now, of course, what was being presented to the court in that case was the Solicitor General had argued that the Lanham Act is applied so broadly that it applies extraterritorially, and the Supreme Court rejected that argument, saying, no, if the Act isn't clear that it's affirmative intention of Congress to apply it so on to the issue, but it is mentioned in Arbaugh, excuse me, in Morrison. Doesn't specifically overrule it, so certainly, I think the more important issue is that the court in deciding this, the issue coming up for the first time on a motion for reconsideration, had to look at it from a manifest error standpoint, because Trader Joe's didn't meet the standard for a motion for reconsideration. Arbaugh, Morrison, these cases predate our motion practice by years and years, so it was clearly available to them to raise those arguments, but they didn't. They didn't raise them until the motion for reconsideration at that point. If they would have brought... Finish up, finish your point. Okay. If they would have brought that issue up before the court, it would have been without going for reconsideration, the court would not have heard the issue because it was waived. In the same way, it's waived with the district court under abuse of discretion. Okay. Thank you, counsel. Thank you. First, to the repeated point that the conduct here is all in Canada, and that's where the focus should be. I'd refer the court to the Wells Fargo decision, the first one where the court adopted the Timberlane test, where the court specifically held the effect on commerce need not be substantial. And instead of focusing on where the locus of activity is, you focus on where the effect is felt. And here, that effect will be felt in the United States. That is where all Trader Joe's stores will be. Second, to the point about Steele, he said a few times the court didn't explicitly overrule it in Morrison. The court actually pointed to the Lanham Act as an example of one of the things that was passing down on it. It was, in many senses, a reaffirmation. And on the point in Ocean Garden, he's pointed to that as an example of conduct where there had to be monetary entry here. There were two alternate holdings in Ocean Garden. I'd point the court to the second holding at page 505 to 506, where the court said, look, even if there's a US trademark, even if the goods were made in a foreign country, sold to a foreign country, if they simply touch through a US foreign trade zone, that is sufficient to find a use in commerce for purposes of the Lanham Act. Okay. Anything else? Thank you. Thank you, counsel. Thank you, counsel. The matter's submitted. Interesting case. Matter's submitted.
judges: Paez, Bybee, Christen